HASBROUCK v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Ulster County. February, 1909.)

1. CARRIERS (§ 406*)—PASSENGERS—TICKETS—SPECIAL CONTRACT—CONSTRUCTION.

A provision in a ticket issued by the initial carrier that it assumed no risk for baggage except wearing apparel, and limited its responsibility to $100 in value, in absence of special contract, should be construed strictly against the carrier seeking to place such limitation upon the contract, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

does not inure to the benefit of a connecting carrier for whose acts the ticket provides the issuing carrier assumes no responsibility.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1553; Dec. Dig. § 406.*]

2. CARRIERS (§ 406*) — PASSENGERS — BAGGAGE — CONNECTING CARRIERS—LIABILITY.

Where the ticket provided that in selling it the issuing company assumed no responsibility beyond its own lines, an action for the value of baggage lost on a connecting line was properly brought against that line, and not against the initial carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1553; Dec. Dig. § 406.*]

3. CARRIERS (§ 234*)—CARRIERS OF PASSENGERS—EFFECTS—INJURY.

New York Public Service Commission Act (Laws 1907, p. 911, c. 429) § 38, imposing a liability on railroad companies, etc., for damage to property in transit, only applies where the loss occurs in the state, though the ticket was issued there, and liability for loss occurring on a connecting road in Massachusetts would be governed by Massachusetts laws.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1538; Dec. Dig. § 234.*]

4. CARRIERS (§ 397½*)—PASSENGERS—BAGGAGE—CARRIERS' LIABILITY.

Where both by custom and the carrier's rules trainmen were required to assist passengers off and on the car, in carrying a passenger's baggage as she alighted to change cars, a trainman acted within the line of his duty so as to make the company liable for his negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1519–1528; Dec. Dig. § 397½.*]

5. CARRIERS (§ 399*)—PASSENGERS—"BAGGAGE."

Plaintiff took passage to visit her daughter in another state, and carried in her pocketbook $20 for expenses and four diamond rings which were suitable to her station in life, and which she expected to wear at a social function to be held at her destination. The money and three rings worth $1,500 were missing from her suit case when it was returned to her by the trainman who assisted her to alight. *Held*, that both the money and rings were a part of her baggage, so that she was entitled to recover against the company for their loss.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1522; Dec. Dig. § 399.*

For other definitions, see Words and Phrases, vol. 1, pp. 663–670; vol. 8, p. 7586.]

6. CARRIERS (§ 403*)—PASSENGERS—BAGGAGE—ACTIONS—CONTRIBUTORY NEGLIGENCE.

A female passenger was not guilty of contributory negligence by giving her heavy suit case to the trainman near her destination to remove it upon alighting at the end of her journey; it being his duty to assist passengers to alight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1537; Dec. Dig. § 403.*]

7. CARRIERS (§ 399*) — PASSENGERS — BAGGAGE — ACTIONS FOR LOSS — NEGLIGENCE.

Where a passenger's suit case containing money and jewels was given to a trainman near the passenger's destination to be carried off the train for her, and the valuables were missing when it was redelivered after being carried 40 or 50 feet, the carrier was guilty of gross negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1522, 1530; Dec. Dig. § 399.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Julia M. Hasbrouck against the New York Central & Hudson River Railroad Company, as lessee of the Boston & Albany Railroad Company, to recover damages for loss of baggage. Judgment directed for plaintiff.

G. D. B. Hasbrouck and William D. Brinnier, for plaintiff.

Amos Van Etten, for defendant.

BETTS, J. On May 23, 1908, the plaintiff was a passenger on the line of defendant's road in the state of Massachusetts, traveling upon a ticket for which she had paid the fare required. She had with her a dress suit case, in which was a card case or purse containing two $10 bills and four diamond rings. A resident of Kingston, N. Y., she was en route from New York City to Natick, Mass. She had to change cars at Worcester. Shortly before reaching there the conductor of the train came to plaintiff and punched her railroad ticket, whereupon she inquired of him if the next station was Worcester. Her dress suit case was with her, and she asked him if he would send her some one to take her dress suit case off at Worcester. In 10 minutes or thereabouts a trainman appeared, and asked the plaintiff if she was the lady who had requested her baggage set off at Worcester, that the conductor had spoken to him about a lady on the train who wanted her baggage set off. The trainman asked the plaintiff if she was through with her dress suit case, and she said, "Is this Worcester?" He said, "Yes; if you are through with your suit case, I will take it," and he did so, taking it to the rear of the car. The plaintiff afterwards saw the trainman walk past her through the aisle of the car and lock the toilet door, and then walk back again. The train arrived at Worcester in about 10 or 15 minutes. Upon arriving at Worcester, the trainman stood at the foot of the step and handed the dress suit case to the plaintiff, and said to her, "Here's your grip." The plaintiff inquired, "Where does the Natick train come in?" The trainman pointed to another track opposite to where they stood, dropped the dress suit case, and went up the steps into the train after the plaintiff had given him some change. The plaintiff kept the dress suit case in her possession, boarded the train to Natick, looked for the three diamond rings and money, and found they were gone. (There were originally four diamond rings in the dress suit case and three of them were missing.) She was traveling in an ordinary day coach, and had kept her dress suit case with her until delivering it to the trainman. Upon practically this condition of affairs, the plaintiff brings an action against the defendant for the value of these diamond rings, amounting to $1,500, and for the $20 in cash, alleging that they were lost through the negligence of the defendant.

The plaintiff is the only witness to the occurrence produced. The defendant introduced no testimony. One other witness testified, in substance, that it was the custom of the trainman on this train to assist passengers on and off the train. One of the principal questions is whether this money and these three diamond rings were baggage within the rule by which a railroad company may be held liable for loss of baggage arising through its negligence. Is it reasonable to hold a railroad liable for so great a loss when the value of the dress suit case

was not stated to its employés? The ticket purchased as stated at the Grand Central Station, New York City, was as follows:

"Issued by
"New York, New Haven & Hartford
Railroad Co.
"This ticket entitles the bearer to One First Class Passage to
Natick, Mass.

"This ticket is void unless officially stamped and dated.

"In selling this ticket for passage over other roads, this Company acts only as agent and assumes no responsibility beyond its own line. This company assumes no risk on baggage except for wearing apparel and limits its responsibility to One hundred Dollars in value, all baggage exceeding that value will be at the risk of the owner unless taken by special contract.

"The checks belonging to this ticket will be void if detached.
"1697                                        J. N. States, G. T. A."

Attached to the tickets were two coupons or checks, numbered 1697, the first of which is as follows:

"Issued by
"New York, New Haven & Hartford Railroad Co.
"On account of
"Boston & Albany Railroad
"Springfield to Natick.

"This check is not good if detached.
"New York to Natick, Mass.        599GC1."

The other coupon is as follows:

"Issued by
"New York, New Haven & Hartford Railroad Co.
"New York to Springfield.

"This check is not good if detached.
"New York to Natick, Mass.        599GC1."

It will be seen that it contains this paragraph:

"This company assumes no risk on baggage except for wearing apparel and limits its responsibility to One hundred dollars in value, all baggage exceeding that value will be at the risk of the owner unless taken by special contract."

This reservation or limitation is to be construed strictly against the party who seeks this limitation upon the contract of carriage. Holmes v. North German Lloyd Steamship Company, 184 N. Y. 280–284, 77 N. E. 21, 5 L. R. A. (N. S.) 650. So construed, it is in favor of the New York, New Haven & Hartford Railroad Company alone, and it is not for the benefit of the defendant. The action is properly brought against this defendant, and not against the New York, New Haven & Hartford Railroad Company. Hartan v. Eastern Railroad Company, 114 Mass. 44.

The defendant claims exemption under New York Public Service Commission Act (chapter 429, p. 911, Laws 1907) § 38. That statute applies to where a loss occurs in this state. The delivery of this dress suit case to the employé of the defendant was in Massachusetts and the loss was there; hence it is governed by the laws of Massachusetts. The dress suit case was unlocked because of a defective lock, but was clasped at each end with the ordinary clasps attached to such dress suit cases or valises. It was the baggage of the plaintiff, kept with her in the car, apparently partly, at least, on account of its great value,

and only given to the defendant's employé to assist her in removing it from the car on account of its size and weight. It is part of the duty of the conductor of a train to "see that trainmen assist passengers on and off trains." See rules in evidence. It was the duty of this trainman to assist plaintiff on and off the car if desired. See rules. He did so by taking her dress suit case for her from the car. She did not require him to come nor request the conductor to send any one to her to take this dress suit case until the car stopped. In 2 Rorer on Railroads, p. 988, in reference to baggage, it is said:

"It is difficult to enumerate the articles that may be included in each particular case in the term 'baggage.' This depends much upon the condition, habits, and circumstances of life of the passenger. Ordinarily it includes a trunk or trunks, with the necessary wearing apparel for both comfort and dress suitable to the condition in life of the person; * * * also the necessary money for the journey" [and it has been held to include valuable jewelry and miniatures as the baggage of a lady]—citing McGill v. Rowand, 3 Pa. 452, 45 Am. Dec. 654.

In McGill v. Rowand, supra, the plaintiff and his wife were passengers on a stage line in Pennsylvania in 1843, when two trunks belonging to the plaintiff were lost. Amongst the articles lost belonging to the wife were a valuable diamond breast pin, a gold breast pin, and miniature set in gold, with chain. Evidence was given as to the value of these articles and a recovery had therefor which was sustained by the court; the liability being predicated upon gross carelessness and negligence upon the part of the driver. "A carrier is liable for the loss of the baggage of a passenger. * * * A railroad ticket entitling the purchaser to transportation in the first-class passenger coaches gives him a right to have his luggage transported at the same time free of charge, but does not give the right to transportation of any merchandise or property not included in the term 'luggage.'" Ray on Negligence of Imposed Duties, p. 551. "What is included in baggage for which carriers are responsible? Whatever the passenger takes with him for his personal use or convenience, either with reference to immediate necessities or the ultimate purpose of the journey, must be considered personal luggage. This would include, not only all articles of personal apparel for use or ornament, but also the gun case or fishing apparatus of the sportsmen, the easel of the artist on a sketching tour, or the books of the student, and other articles, the use of which is personal to the traveler, and the taking of which has arisen from the fact of his journey." Ray on Negligence of Imposed Duties, p. 561. "What constitutes baggage is for the jury to determine, both as to character and value, depending on the tastes, habits, and circumstances of the traveler and his convenience and necessities. Valuable laces and jewelry worn as part of personal apparel are baggage." Ray on Negligence of Imposed Duties, page 564.

In defining "baggage" it is said:

"In its broadest sense it denotes those things which a passenger takes with him on his journey, either for his use while in transit or to accomplish the ultimate purpose of his journey. * * * In its strictest sense it may be defined as meaning those things which passengers of the same class usually or fittingly carry with them for their personal use or convenience on similar journeys. * * * Broadly stated, the rule is that those things are personal

baggage which a passenger carries with him for his personal use and convenience on his journey, and during his stay at·the place to which he may be going." 4 Elliott on Railroads, 2604, 2605.

In Railroad Company v. De Maluta Fraloff, 100 U. S. 24, 25 L. Ed. 531, a railroad company was held liable for valuable laces and wearing apparel of the value of $10,000 in the trunks of Fraloff, the passenger, and being transported by the railroad company as a part of her personal baggage. The main contention of the railroad company upon the trial below was that good faith required the passenger, when delivering her trunks for transportation, to inform its agents of the peculiar character and extraordinary value of the laces in question, and that her failure in that respect, whether intentional or not, was in itself a fraud upon the carrier, which should prevent any recovery in this action. The trial court refused to make any such instruction to the jury, and the United States Supreme Court holds:

"We are not referred to any legislative enactment restricting or limiting the responsibility of passenger carriers by land for articles carried as baggage. * * * Further, it is not claimed that any inquiry was made of the 'passenger' either when the trunks were taken into the custody of the carrier, or at any time prior to the alleged loss, as to the value of their contents. * * *"

It is farther held that the railroad company "may rightfully require, as a condition precedent to any contract for the transportation of baggage, information from the passenger as to its value; * * * but in the absence of legislation limiting the responsibility of carriers for the baggage of passengers, in the absence of reasonable regulations upon the subject by the carrier, of which the passenger has knowledge, in the absence of inquiry of the passenger as to the value of the articles carried, under the name of baggage, for his personal use and convenience when traveling, and in the absence of conduct upon the part of the passenger misleading the carrier as to the value of his baggage, the court cannot as matter of law declare * * * that the mere failure of the passenger unasked to disclose the value of his baggage is a fraud upon the carrier, which defeats all right of recovery," and the verdict of the jury was upheld by the court.

In Jordan v. Fall River Railroad Company, 5 Cush. (Mass.) 69, 51 Am. Dec. 44, it is held that:

"Common carriers of passengers are responsible for money bona fide included in the baggage of a passenger for traveling expenses and personal use to an amount not exceeding what a prudent person would deem proper and necessary for the purpose, but not for money beyond that amount or intended for other purposes, unless the loss is occasioned by the gross negligence of the carriers or their servants."

The court also holds:

"But it is now well settled, and is a matter of great and general convenience and accommodation, in this age of universal and perpetual traveling, that passenger carriers are responsible for the baggage of a passenger, and that the reward for conveying the baggage is included in the passenger's fare."

In Brown v. Eastern Railroad Company, 11 Cush. (Mass.) 97, it is held that:

"A notice that a railroad corporation would not 'be. liable for the baggage of passengers beyond a certain amount, unless,' etc., printed on the back of

the passage ticket, * * * does not raise a legal presumption that the party at the time of receiving the ticket and before the train leaves the station had knowledge of the limitations or conditions which the carrier had attached to the transportation of the baggage of passengers."

In Kinsley v. Railroad Company, 125 Mass. 54, 28 Am. Rep. 200, the plaintiff was a passenger on the defendant's railroad, and, on leaving the car for dinner, inquired of an employé in the car if his baggage would be safe if left in the car, and was told to leave all his baggage in the car, that it would be perfectly safe. The plaintiff left his baggage in the car, and, on returning, found that certain of his baggage had been transferred to another car and one bag was lost, and it was held:

"Although a railroad corporation is not responsible as a common carrier for an article of personal baggage kept by a passenger exclusively within his own control, it is liable for the loss of such an article by the negligence of the corporation or its agents or servants and without fault of the passenger."

In Lewis v. New York Sleeping Car Company, 143 Mass. 267, 9 N. E. 615, 58 Am. Rep. 135, the defendant was held "bound to use reasonable care to guard from theft the property of a passenger occupying a berth on a car, and if, through want of such care, such personal effects of a passenger as he may reasonably carry with him are stolen, the company is liable for the loss."

In this case we are considering, while the court has held that the attempted limitation was not applicable to this defendant, still the plaintiff testified and it is the only evidence in the case that she did not see the limitation on the ticket. In Coward and Wife v. Railroad Company, 84 Tenn. 225, 57 Am. Rep. 244, it was held that a watch and chain and a diamond pin of Mrs. Coward stolen from her while a passenger was baggage and wearing apparel, and a judgment was given for the jewelry for the sum of $1,400. In Holmes v. North German Lloyd Steamship Company, 184 N. Y. 280–284, 77 N. E. 21, 5 L. R. A. (N. S.) 650, it is held that where certain hand baggage, unchecked, to be used during the journey, was received by the defendant, but never delivered to the plaintiff, the loss, if unexplained, established a prima facie case of negligence, and the company was liable for the full value of the lost articles, the court saying:

"It is unnecessary to determine whether the liability of the defendant in what may be termed the incidental service of carrying the passengers' hand luggage from the wharf to the stateroom was that of an insurer or merely for negligence. The loss of the suit cases unexplained established a prima facie case of negligence, and no explanation was given. The service thus rendered was not a voluntary one on the part of the employé outside of the scope of his duty, for it is the common custom of the stewards and other employés of an ocean steamer to carry the cabin baggage of the passengers on and off the boat."

In this case we have the custom proven upon the trial of trainmen assisting passengers on and off the car. We have the rules in evidence requiring the same. It was the duty of the conductor and the duty of the trainman in that respect, so that in taking this baggage of the passenger the trainman was acting in the line of his duty, performing the labor for which he was compensated by the company.

The plaintiff in this action is the wife of a former deputy Attorney

General and former Justice of the Supreme Court of this state. She was journeying to Natick, Mass., from her home in Kingston, N. Y., for the purpose of visiting her daughter, who was attending a school at Natick, and intended wearing these diamonds which were suitable for her station in life (and had been worn by her many times previously) at the reception to be held at her daughter's school or for the school that evening, and also at a social function on the following day. It is difficult to see what other precautions the lady could have taken or how there was carelessness or negligence on her part. It was near the close of a long journey. The suit case was heavy, and the fatigued lady desired assistance to remove the dress suit case from the train, and applied to the representative of the defendant in charge of the train to send the trainman, whose duty it was to render just such service as he did render. He was not expected to break into the dress suit case nor permit any one else to. The loss is real and absolutely unexplained. The defendant was guilty of gross negligence in not being able to carry a dress suit case 40 or 50 feet and deliver it to the owner unharmed.

The court thinks that the money carried was a part of the necessary money for the use of the passenger on her trip, extra money as she described it for her journey, also that the rings were a part of her baggage within the decisions in the state of Massachusetts and the other cases cited, and, without farther citation of authorities, judgment is directed for the plaintiff and against the defendant for the sum of $1,520, being the value of the rings and the $20 in money, with costs.