**PULLMAN CO. v. HAYS et ux. (No. 30.)**

(Court of Civil Appeals of Texas. Waco. Dec. 20, 1923. Rehearing Denied Jan. 24, 1924.)

1. **Carriers ⬅413(1)—Negligence to be shown for liability of sleeping car company for theft of passenger's personal effects.**

A sleeping car company is not liable as a common carrier or innkeeper for theft of a passenger's personal effects, but is simply under duty to use reasonable care to guard against such theft; and the loss does not make out a prima facie case, but negligence must be shown.

2. **Carriers ⬅417—No sufficient evidence of negligence of sleeping car company in theft of passenger's rings.**

Evidence, in action against sleeping car company for theft of passenger's rings left in ladies' dressing room, *held* insufficient to show negligence of the company in failing to find them, either before or after it knew of the loss.

3. **Trial ⬅352(1)—Special issue to be framed so as to be intelligible without reference to pleadings.**

A special issue as to kind, character, and value of property lost should be framed in such way as to be intelligible without referring the jury to the pleadings.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by C. H. Hays and wife against the Pullman Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, for appellant.
Spell, Naman & Penland, of Waco, for appellees.

BARCUS, J. Appellees alleged that appellee Mrs. Hays made a trip over the Fort Worth & Denver City Railway Company from Denver, Colo., to Wichita Falls, Tex., riding in the Pullman car and reaching Wichita Falls about 2 o'clock in the afternoon. Just before she got to Wichita Falls, Mrs. Hays noticed she was almost at the end of her journey and went into the ladies' dressing room and hurriedly removed two diamond rings and one cameo ring and laid them on the shelf above the wash basin, together with her purse; and when she left the dressing room she took her purse but forgot her rings. As she came out she alleged, the porter went in the dressing room and in a short time came out with the soiled towels, which he put in the closet for that purpose, and looked at her intently. She and the only other lady passenger on the Pullman got off the train at Wichita Falls, and she waited at the depot for some 10 or 15 minutes for friends, and just as the train was leaving she remembered that she did not have her rings and attempted to get on the back end of the moving train, and a brakeman refused to stop the train or let her on. She alleged that the Pullman Company was liable in that she charged the porter had stolen the rings, and that the company was negligent in not discovering the rings before they knew they had been left on the train, and was negligent in not discovering them after they knew she had left them on the train and was negligent in not permitting her to get on the train after it had started. She alleged

that both the porter and the brakeman were agents of the Pullman Company.

The Pullman Company denied specifically that the brakeman was its agent, but alleged that the brakeman was the agent of the Fort Worth & Denver City Railway Company. The cause was submitted to a jury on special issues, and the jury found the total value of the rings to be $800; that the porter did not take them; that the Pullman Company was negligent in not discovering the rings before they were notified that the rings were left on the train, and that the company was also negligent in not finding the rings after it was notified that they had been left on the train; and that both of said acts of negligence were the proximate cause of the loss of the rings. They also answered that Mrs. Hays was not negligent in leaving her rings on the train. They also answered that her re-entrance into the train was prevented by the brakeman of the Fort Worth & Denver City Railway Company, and that that was negligence, which was the proximate cause of the loss of her rings.

The appellees and appellant each filed motions to have judgment entered in their favor on the findings of the jury. The court overruled the motion of appellant and granted the motion of appellees, and entered judgment for appellees for $800.

The evidence most favorable to appellees is that a short time before Mrs. Hays reached Wichita Falls, she discovered that she was nearing her destination and went by her berth to get her handbag, and then hurriedly went to the ladies' dressing room to "freshen up" and removed her rings and laid them on the shelf above the wash basin with her money purse. After she had "freshened up," she took her money purse and left the dressing room, leaving her rings on the shelf. As she came out of the dressing room, she met the Pullman porter going into the room. She went to her berth, put on her hat and coat, and in a few minutes reached Wichita Falls. The porter went into the dressing room, gathered up the soiled towels, locked the inner apartment of the dressing room, came out, looked at Mrs. Hays intently, put the soiled towels in the closet, and when the train reached Wichita Falls he preceded the passengers out of the car; Mrs. Hays being the last of the passengers to leave. The porter remained on the outside to help the passengers off, and then helped load 14 passengers into the Pullman car off of which Mrs. Hays had come, among them being from 6 to 10 women. Mrs. Hays stood around the depot for 10 or 15 minutes, waiting for some friends. Just as the train started, she missed her rings and attempted to get on the back end of the train, and the brakeman of the Fort Worth & Denver City Railway Company, who was riding on the rear end of the train, refused to let her on and refused to stop the train. She told the brakeman that she had left her rings in the dressing room of the Pullman, and the brakeman promised to look for them and, if he found them to wire her. The brakeman testified that he at once went into the Pullman car and told the porter about the rings, and that he and the porter went together into the dressing room to hunt for the rings, and as they went in they met two of the ladies coming out of the dressing room; that they made search and were unable to find the rings; that they reported the matter to the Pullman conductor, and the Pullman conductor inquired among the passengers, but the rings could not be located. Mrs. Hays had the Pullman Company's agent at Fort Worth called over the long distance telephone and notified of the loss.

[1] A pullman company is not liable as a common carrier or as an innkeeper, yet it is its duty to use reasonable care to guard the passengers from theft, and if, through want of such care, the personal effects of a passenger such as he might reasonably carry with him, are stolen, the company is liable for it. The mere proof of the loss of the property by a passenger while occupying a berth does not make out a prima facie case, and to sustain a recovery some evidence of negligence on the part of defendant must be given. Pullman Sleeping Car Co. v. Hatch, 30 Tex. Civ. App. 303, 70 S. W. 771.

[2] The evidence in this case is not sufficient to support the finding of the jury that appellant was negligent in failing to find the rings before it knew they were lost, or in failing to find them after it knew they were lost.

Mrs. Hays as a passenger had left the train, presumably with all of her effects. Fourteen passengers, among them 6 to 10 women, had taken passage in the Pullman car, and some 15 or 20 minutes in time had elapsed before the Pullman Company had notice that the rings had been left on the train. The jury found that the porter did not take the rings. A number of passengers had access to the dressing room who might have found the rings. There is no evidence showing that the company by any acts could have found said rings by the use of ordinary care or diligence, and the company is charged with only ordinary care in protecting the property of its passengers. Pullman Sleeping Car Co. v. Hatch, supra; Pullman Co. v. Franks (Tex. Civ. App.) 187 S. W. 501; Dargan v. Pullman Car Co., 2 Willson, Civ. Cas. Ct. App. § 691; Pullman Palace Car Co. v. Pollock, 69 Tex. 120, 5 S. W. 814, 5 Am. St. Rep. 31; Pullman Palace Car Co. v. Matthews, 74 Tex. 654, 12 S. W. 744, 15 Am. St. Rep. 873; Whicher v. Boston & A. R. Co., 176 Mass. 275, 57 N. E. 601, 79 Am. St. Rep. 314; Whitney v Pullman Palace Car Co., 143 Mass. 243, 9 N. E. 619; Tower v. Utica

R. R. Co., 7 Hill (N. Y.) 47, 42 Am. Dec. 36; Pullman Palace Car Co. v. Hall, 106 Ga. 765, 32 S. E. 923, 44 L. R. A. 790, 71 Am. St. Rep. 293.

[3] The question as to the kind, character, and value of the respective rings lost was sharply contested. The court in submitting the issues asked the jury in substance to find whether Mrs. Hays suffered the loss of the rings as described in plaintiff's petition. Appellant objected to the issues being submitted in that form because the question referred the jury to the pleadings. Where there is an issue as to the kind, character, and value of property lost, the issues should be framed in such way that they will be intelligible without referring the jury to the petition. Egan v. Egan (Tex. Civ. App.) 235 S. W. 659.

The other assignments of error raise questions that will not likely arise on another trial.

For the reasons herein stated, this cause is reversed and remanded.