ILLINOIS CENTRAL RAILROAD CO. *v.* CHARLES HANDY.

1. SLEEPING-CAR COMPANY. *Liability of for property stolen. Negligence of passenger.*
   If a passenger, on leaving a sleeping-car at his destination, negligently leave his pocket-book containing money on the car, the sleeping-car company is not responsible for the property so left, if it be stolen by some one not in the employ of the company, unless an agent of the company discovered before the theft that such property had been left.

2. SAME. *Liability for property stolen by passenger from fellow-passenger. Negligence.*
   A sleeping-car company is not liable to a passenger for property stolen by a fellow-passenger, where the theft was not committed in the presence of a servant of the company, or under such circumstances as would reasonably suggest to such servant that the theft was being or about to be committed, if the servants of the company were not guilty of any negligence in keeping that reasonable guard which its contract implies that it will keep.

3. SAME. *Liability for money stolen by employee. Extent thereof.*
   A sleeping-car company is not liable for money stolen by one of its employees from a passenger on its car, except to the extent of a sum reasonably sufficient for the expenses of the journey which such passenger is undertaking.

APPEAL from the Circuit Court of Madison County.

HON. T. J. WHARTON, Judge.

The case is stated in the opinion of the court.

*Smith & Powell,* for the appellant.

The court tells the jury that if the money was taken by a party who was accustomed to hang around the car, and was permitted by the porter to go on the car after the passengers had left, then the company is liable. We find it difficult to reconcile this instruction with either common sense or good law. The mere permitting a stranger to come upon the train and assist in sweeping out the car did not make the stranger an agent of the company and the company responsible for his acts; nor did it indicate a want of ordinary care on the part of the porter, for it seems from the evidence that the porter had already gone through the car and taken up the linen and whatever else was necessary to be cared for, and the only thing such stranger could do was to sweep up the car; and if in

doing this he found Handy's pocket-book and appropriated the money, we fail to see how the company would be liable for his acts.     73 Illinois Rep. 360.

*W. P. & J. B. Harris*, on the same side.

No question of negligence as respects what a man carries about his person can arise, because there is no obligation resting on any one, or growing out of any relation, which gives him any claim upon the care and vigilance of others as to what he carries about his person.     This healthy principle has suffered slight modification where *corporations* are concerned.     It ought not to have been modified at all, and we so insist here, that it shall not be modified. As a new question here, it is to be hoped that the original wholesome doctrine, that what a man chooses to carry about his person, of which he apprises no one, and as to which he will permit no one to ask about or meddle with, trusting himself only, he can fix no responsibility on any one for being robbed of it, except the robber.     It is not baggage, and it is not freight; it is not a passenger.     We do not, however, hold it to be essential in this case, so far as showing error may be concerned, to sustain the proposition beyond its scope, as given in certain leading American cases which formulate the doctrine thus : where *actual negligence of a carrier's servants* occasions the loss of money carried by a passenger to *answer his traveling expenses,* the carriers will be responsible for the sum so carried and stolen or lost, but if the passenger sees fit to carry a larger sum of money, to be employed in business matters, or for other purposes than to defray his expenses, he is without remedy, even where negligence is correctly imputed.     We think it proper to quote from the case of *Blum* v. *Pullman Palace Car Co.*, as it seems to be accepted in *Woodruff* v. *Deihl*, 84 Ind., as giving the modern modified doctrine in cases relied on by the appellee's counsel.

" Then as to the measure of damages.     The plaintiff   *   *   * claims to recover the entire amount of his loss.     The same reasoning would entitle him to recover a fortune if he had seen fit to carry it about his person and lay it under his pillow, and this, too, in the absence of any notice to the company.     The defendant,

however, like a common carrier of passengers, is liable only for such property as the passenger may be reasonably supposed to carry about his person. It extends to clothing and personal ornaments, the small articles of luggage usually carried in the hand, and a *reasonable sum of money for his traveling expenses.*" P. 592. This case is reported in 1 Flippin 500, C. Ct. U. S. (Tennessee).

We ask the court's attention to the conclusion of the opinion, or charge, and the verdict under it. He cannot hold the carrier responsible, even though the loss may result from the carrier's negligence, not even where it appears that the robber or thief was a servant of the carrier. There is in such case no duty or obligation of any kind on the carrier. The carrier is not to be thus entrapped, and, besides, a general rule takes the case entirely out of any obligation which the carrier incurs in carrying passengers and freight. *Blum* v. *Pullman Palace Car Co.*, 3 Civil Law Journal 591 ; *National Bank* v. *M. & C. R. R. Co.*, 20 Ohio St. 259. This is a leading case, and is accepted by Rorer on Railroads as the true doctrine. 22 Rorer Ry. 1276–77 ; Hutch. Carriers, §§ 696, 697 ; *Weeks* v. *R. R. Co.*, 9 Hun. N. Y. 559–560. The Ohio case was argued on the state of the authorities, English and American, and there are a great many cases cited.

*Calhoon & Green*, and *W. H. Powell*, for the appellee.

It would be a hard rule to confine the right of recovery to a sum sufficient for actual expenses. A man should be allowed to expect protection for a sum sufficient to pay his expenses *eundo, maneudo et redeundo*, and for such usual purchases as he might desire to make while remaining, and the jury are the proper judges of the proper sum. If one visits a city, he may reasonably be expected to take with him in cash enough to accomplish his purposes of expenses, small purchases, even to pay small debts, with a proper margin for accidents. Three hundred dollars is surely reasonable for a visit to New Orleans. Even if the instruction were too broad as to this, the court would uphold the verdict, because right, and because a different result could not be rationally expected.

If the sum was reasonable for the journey, it cannot, in prin-

ciple, alter the case that plaintiff designed to pay a debt with it. We insist that the test of actual expenses will not do. The courts cannot go into the question of how much a passenger should spend, or distinguish between the habits of different passengers, or go into questions of cheap boarding-houses or expensive hotels. Common sense would fix the test at a sum reasonably prudent, in view of all the facilities of travel and commerce, for one to carry on his person while traveling. *Non constat* that the passenger's journey will cease at any particular point. Shall there be a different principle applied to a traveler going to New York from one going to New Orleans or Cuba? The jury is the proper forum for this question.

But, manifestly, the jury found that defendant's employees got the money, and while in the discharge of defendant's business, and, therefore, we insist the amount is immaterial. Surely it is a small matter to hold a man, or a company, inviting public patronage, to vouch the honesty of its servants. If a man's servant strikes me or robs me while engaged in his master's business under contract with me, surely the master is liable. The servant is the master in such case, and, therefore, the company robbed Handy, and is liable. If the servant had kicked him off the train, the company would have been held to have done the kicking. Shall a man rob me and then plead that I had more money than I ought to have had?

Railroad companies by having sleeping-cars on their trains invite passegers to sleep on them, and incur thereby the contract obligation to keep reasonable watch over their effects while they sleep to prevent theft, and are responsible for theft committed while they neglect such watch. *Crozier* v. *Boston,* 43 How. Pr. 466; *Woodruff* v. *Deihl,* 84 Ind. 474; *Same Case,* 43 Amer. Rep. 102; *Blum* v. *Southern,* 1 Flip. C. Ct. 500; Thompson on Carriers 531; Hutchinson on Carriers, § 60.

The sleeping-car passenger may sue the railroad company pulling the car. *Cleveland* v. *Walrath,* 38 Ohio St. 461; *Same Case,* 43 Amer. Rep. 433; *Pennsylvania* v. *Roy,* 102 U. S. 451; *Kingsley* v. *Lake,* 125 Mass. 54.

COOPER, C. J., delivered the opinion of the court.

The appellee, a resident of Canton, Miss., on the — day of ——————— A. D. 188 , desiring to pay certain debts which he owed in the city of New Orleans, took passage on the appellant's train on the evening of that day. He had, as he testifies, about three hundred and seventy dollars in currency and some checks, all contained in a large leather pocket-book which he carried in the hip-pocket of his trousers. At Jackson he entered a chair car of the defendant, paying one dollar for the privilege of riding therein. He took off his coat and vest and went to sleep. The train arrived at New Orleans early in the following morning and appellee put on his coat and went to a hotel, and soon afterward discovered that his book, with its contents, was missing from his pocket. He immediately returned to the office of the company and was there handed his pocket-book by one of its officers to whom it had been delivered by the porter of the chair car, who testified as a witness in this case and said that he found it a seat or two from that which had been occupied by Mr. Handy, and that he delivered it without opening it to the agent by whom it was given to him. On opening the book it was found that there was in it only fifty-seven dollars in money ; the appellee stated to the agent that it "was all right," took the book and its contents, but in an hour or less went to the principal office of the defendant and claimed that three hundred and eight dollars in money had been abstracted from it. The company refused to recognize its liability for the loss, and this suit is brought to recover therefor.

On the trial it was shown that chair cars are in charge of the porter, there being no conductor required for them specially, and that the porter of this car was at his post of duty during the night. No particular act of negligence while the car was *en route* is charged, but it is shown that after the passengers had left the car and before the porter had cleaned it out a person who was not employed by the company, but whom the porter occasionally hired to aid him in cleaning up the car, was permitted to enter it, and it is suggested that perhaps the theft was committed by him.

On the trial the court instructed the jury that the company was

responsible for the loss if it resulted from the negligence of its servants to so keep watch over the passengers as to prevent theft; that it was liable if the theft was committed by its own servants or by the person in New Orleans who was permitted to enter the car after the passengers had left it, and that this liability extended to such sum of money as the jury might think it " was reasonably prudent for Handy to have with him on the journey he was on."

Because of the invitation extended to travelers by sleeping-car companies to sleep upon their cars, it has been held that they owe and assume to their patrons the duty of exercising such reasonable guard over them, to prevent theft of their personal effects, as the circumstances admit and the passenger has a right to expect. This obligation is not such as pertains to common carriers or inn-keepers, and such companies do not occupy the relation of insurers against all loss under all circumstances. The accommodation offered implies a certain degree of privacy for the passenger upon his retirement to rest, an intrusion on which by the servants of the company would be rightly resented by him. If the company should be held liable to one passenger for a theft committed by another, it must be either upon the ground that it is, under the common-law liability of an innkeeper, a view not sanctioned by any court, so far as we are informed, or because by its contract it may be fairly said to bind itself to keep watch upon each traveler on its car, which would result in the establishment of a system of intolerable espionage. One who avails himself of the comfort afforded on such cars does so with full knowledge of the fact that others, whose character the company cannot possibly know, may become fellow-travelers with himself, and that the arrangement of the car into berths or sleeping-chairs is such that he will necessarily, while asleep, be subjected to easy approach by any dishonest traveler in the same car. The risk of loss from such persons he assumes as an incident of his circumstances, and the company can only be made responsible by evidence of its neglect to keep that reasonable guard which its contract implies that it will. Where the doors of the car are left open and unguarded so that unauthorized persons may have access to it, or the officers

charged with its superintendence leave it without that supervision by them which the passengers had a right to rely on, as in the cases of *Blum* v. *R. R. Co.*, 1 Flip. C. Ct. 500, and *Woodruff* v. *Deihl*, 84 Ind. 474, it would seem that such negligence is shown as would render the company liable for a loss. But there is no evidence in this case that the car was at any time unguarded, and under such circumstances there is, in our opinion, no liability for a theft committed by a fellow-passenger. We speak, of course, of a theft the circumstances of which are unknown to the employees, and not of such as might be committed by one in the presence of the servants, or under such circumstances as would reasonably suggest to such servants that a theft was being or about to be committed. If the appellee carelessly and negligently left his pocket-book on the car when he reached his destination, and its contents were abstracted by persons other than the servants of the company, there would be no liability on the part of the company, for it is only by reason of the fact that the company owes some duty to the passenger as such that there is any sort of responsibility resting on it in relation to his property, which, for the time, is considered as a part of the person. But when a passenger leaves the train at his destination the company may reasonably think that he has taken with him all those things which one is accustomed to carry about his person, and until it is shown that the property is discovered by its agents to have been left behind, we know of no principle of law by which it can be charged with any duty concerning it.

The plaintiff contends that the jury was authorized by the evidence to find that the pocket-book was found or stolen by the porter who had charge of the car and was rifled by him, and that if such be the case the company is responsible for the loss, because it vouches for the honesty of its employees. This, we think, is correct within certain limits, viz.: that the company is responsible to its patrons for the conduct of its employees as to any property as to which it is brought into contract relations with its owner. But as to any other property, whether owned by a passenger or a stranger, it has no sort of connection, and as to such it lies under no greater obligation than it owes to property of all other persons,

the measure of which is fixed by the maxim *sic utere tuo ut non alienum loedas.* The extent to which liability has been fixed in cases of this sort has not been held to include anything except the clothing, ornaments, and such articles as are usually carried by travelers in their hands, together with a sum of money reasonably sufficient for the expenses of the journey in which one is engaged. It appears from the testimony of Mr. Handy that the money lost was being carried by him to New Orleans, to be used in the payment of a debt due to persons there. It was a much greater sum than was necessary for the payment of any expenses incident to the journey he was upon, and as to all in excess of such sum there was no liability of the company, even though it was stolen by its servants, for the reason that as to such excess it stood in no contract relation with him, owed and undertook no duty, nor authorized its servants to do anything in reference to it. The case of the *First National Bank* v. *R. R. Co.*, 20 Ohio St. 259, is strictly analogous on this branch of the case, and in the conclusion there reached we fully concur.

*The judgment is reversed and cause remanded.*