(161 App. Div. 756)·
## GOLDSTEIN v. PULLMAN CO.

(Supreme Court, Appellate Division, First Department.   April 17, 1914.)

1. CARRIERS (§ 413*)—SLEEPING CAR COMPANIES—PASSENGERS—BAGGAGE—
   LIABILITY.
   While a sleeping car company is not an insurer of the baggage, money,
   or other personal effects of the passenger, it is nevertheless bound to ex-
   ercise reasonable watchfulness and care over the same while the passenger
   is asleep, and is liable for the loss thereof arising from negligence in that
   regard.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1583–1588; Dec.
   Dig. § 413.*]

2. CARRIERS (§ 417*)—SLEEPING CAR COMPANIES—PASSENGERS—BAGGAGE—
   LOSS—NEGLIGENCE—PRIMA FACIE CASE.
   Plaintiff boarded one of defendant's sleeping cars at night; the porter
   preceding him, carrying his bag, which was placed beside his berth.   Plain-
   tiff, before going to bed, went to the washroom with his bag, then returned
   to his berth, put the bag alongside, and went to sleep.   When he arose in
   the morning his bag was gone.   He notified the porter and conductor, but
   it could not be found.   *Held*, sufficient to establish a prima facie case of
   the sleeping car company's negligence in failing to exercise reasonable
   watchfulness over the bag to prevent its being stolen during the night.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec.
   Dig. § 417.*]

   Ingraham, P. J., dissenting.

Appeal from Appellate Term, First Department.

Action by Louis Goldstein against the Pullman Company.   From
a determination of the Appellate Term, affirming a judgment of the
Municipal Court in favor of defendant dismissing the complaint, plain-
tiff appeals.   Reversed, and new trial ordered.

Argued   before   INGRAHAM,   P.   J.,   and   McLAUGHLIN,
LAUGHLIN, CLARKE, and SCOTT, JJ.

Paskus, Cohen & Gordon, of New York City (Arthur B. Hyman, of
New York City, of counsel), for appellant.

Alexander & Green, of New York City (Clifton P. Williamson, of
New York City, of counsel, and Allan McCulloh and William Carrell
Diamond, both of New York City, on the brief), for respondent.

CLARKE, J.   The plaintiff was a cloak and suit manufacturer, who
had been traveling in his business for 18 years.   On the 10th of Jan-
uary, 1913, he took passage on a train on the Baltimore & Ohio South-
western Railway Company at Cincinnati for Wheeling, W. Va.   He
purchased a Pullman berth for $2.   He had a hand bag containing his
personal belongings which was too large to go under the berth when
made up.   It was agreed that the bag and its contents were of the
reasonable value of $120, with the exception of a diamond scarf pin,
the value of which was testified to as from $200 to $225.   He boarded
the train at about 10 or 10:30 at night.   The porter preceded the
plaintiff into the car, carrying his bag, which he placed beside his
berth and there left it.   Afterwards, before going to bed, at about

11 o'clock, plaintiff went to the washroom, taking his bag with him, because, as he testified, the train was due at Wheeling so early, 5:30 a. m., he thought best to change his linen, and put his studs in his shirt that night. After this he returned his things into the bag, took it back, and put it alongside of his berth and went to sleep. When he got up in the morning his bag was gone. The porter and the Pullman conductor were notified. They looked for it and could not find it. He had to get off, as he was at Wheeling. He reported his loss to the Pullman Company, and then brought this suit. The trial court at the close of plaintiff's case held that he had not established any cause of action, and dismissed the complaint for failure of proof. The Appellate Term affirmed the judgment and granted leave to appeal to this court.

[1] Sleeping car companies are not insurers of the baggage, money, or other personal effects of a passenger, and courts have almost universally refused to impose upon them the absolute liability attaching to innkeepers and common carriers of goods. While the law, however, does not make a sleeping car company the insurer of the effects of the occupants of its berths, it does not absolve it from all liability, but the ground of this liability rests upon negligence. In Carpenter v. New York, New Haven & Hartford Railroad Co., 124 N. Y. 53, 26 N. E. 277, 11 L. R. A. 759, 21 Am. St. Rep. 644, the court said:

"The negligence complained of is that none of the defendant's employés were continually on guard in the car in a position to observe the movements of all persons in the passageway between the sections. A corporation engaged in running sleeping coaches, with sections separated from the aisle only by curtains, is bound to have an employé charged with the duty of carefully and continually watching the interior of the car while berths are occupied by sleepers. Pullman Car Co. v. Gardner, 3 Penny. (Pa.) 78. These cars are used by both sexes of all ages, by the experienced and inexperienced, by the honest and dishonest, which is understood by the carriers, and, though such companies are not insurers, they must exercise vigilance to protect their sleeping customers from robbery. A traveler who pays for a berth is invited and has the right to sleep, and both parties to the contract know that he is to become powerless to defend his property from thieves, or his person from insult, and the company is bound to use a degree of care commensurate with the danger to which passengers are exposed. Considering the compensation received for such services and the hazards to which unguarded and sleeping travelers are exposed, the rule of diligence above declared is not too onerous."

[2] There is a line of cases holding the carrier or the sleeping car company responsible where there has been a delivery to a trainman or a porter of the passenger's property, either directly, or constructively by a notification to and a promise by such employé of watchfulness or care, and such direct or constructive delivery has been held to satisfy the requirement of establishing a prima facie case of negligence.

In Arthur v. Pullman Co., 44 Misc. Rep. 229, 88 N. Y. Supp. 981, the baggage was put into the stateroom in the car, and the porter was asked if it would be safe to leave the baggage while the party went to the dining car, and he replied, "Why certainly it is safe." And he was told, "I put my things in the stateroom, so all the baggage is together; keep your eye on it." To which the porter replied, "I will."

Mr. Justice Freedman, writing for the Appellate Term, held there was sufficient evidence of negligence to raise the question of fact, and a judgment for the plaintiff was affirmed.

In Croll v. Pullman Co., 61 Misc. Rep. 265, 113 N. Y. Supp. 542, the baggage was left in the car upon the assurance of the conductor that it would be. all right. The Appellate Term held a prima facie case of negligence was made out.

In Sherman v. Pullman Co., 79 Misc. Rep. 52, 139 N. Y. Supp. 51, plaintiff endeavored to put her hand bag under the berth, but the porter said, "I will·take care of this for you," and she delivered the bag to him. The next morning she found the bag in front of her berth and her jewelry missing. The Appellate Term held a prima facie case had been made.

In Hasbrouck v. N. Y. Cen. & Hudson R. R. R. Co., 202 N. Y. 363, 95 N. E. 808, 35 L. R. A. (N. ·S.) 537, Ann. Cas. 1912D,. 1150, a trainman, a few minutes before the train reached the passenger's destination, took her baggage to the forward end of the car. After she received it she found that jewelry and money had been taken therefrom. The Court of Appeals held a prima facie case had been made.

It is argued in the case at bar the said cases apply because the porter took the bag into the car and placed it by the passenger's berth. With this we cannot agree, because the custody of the bag by the porter was but temporary; it was retaken immediately by the plaintiff and remained absolutely under his immediate control, he having taken it to the washroom and back and himself put it by his berth immediately before retiring. So the case must rest, not upon delivery to an employé of the company, or a special assurance from him that it would be safe, or a promise by him to look after it, but upon the general obligation of the defendant, as a sleeping car company, to protect the personal belongings of its passenger while using its berths for the purposes for which it received its compensation. The question, therefore, is: Was there enough to put the defendant to its proof?

In the Carpenter Case, supra, the court said:

"The train stopped at eight cities to take up and set down passengers, staying at New Haven 12 minutes and at Springfield 4. The undisputed evidence is that the entire force employed on the sleeper, which ran over an important thoroughfare, and made frequent stops, was one man, who acted as conductor, as porter, and was also engaged, for his own profit, in blackening the shoes of the passengers. Whether this employé had that part of the sleeper which is for the common use of passengers and the servants of the corporation constantly in view during the trip· is not shown by the evidence, except inferentially. The facts hereinbefore referred to, that the car ran over an important route between two great cities, through and stopping at eight considerable ones, that but one person was employed on the car, the services rendered by him for the defendant, and those which he was at least permitted to render to passengers for his own profit, affirmatively appear, and in addition it may well be presumed that he assisted the passengers in entering and leaving the coach at intermediate stations. The existence of these facts are not denied, nor was any explanation of them offered. The defendant gave no evidence. Under the circumstances, the evidence was sufficient to put the defendant to proof of the care which it took of the occupants of the sleeper on this trip, and, in the absence of any explanation on its part, it was sufficient to require the question whether the loss was caused by the defendant's negligence to be submitted to the jury."

In Williams v. Webb, 27 Misc. Rep. 508, 58 N. Y. Supp. 300, Mr. Justice Leventritt, writing for the Appellate Term, said:

"The very powerlessness of the passenger and the impossibility of his retaining manual control or possession of his wearing apparel, valuables, or money while asleep imposes a duty of active watchfulness on the car proprietor, for the violation of which the law will compel it to respond in damages. The contract for the sale of a berth ticket involves the implied invitation to sleep, and, reasonably, the implied agreement to guard property from depredations by theft by the exercise of a degree of vigilance commensurate with the danger to which the passenger is exposed. A sleeping car company is bound to maintain a reasonable watch during the night while the passenger is asleep, or using the necessary conveniences of the car, and it is bound so to manage its car as not unreasonably to expose his property to an unusual risk of loss by thieves or otherwise. In the case at bar, sufficient evidence of negligence was introduced to raise a question of fact for the jury, whether or not the defendant was remiss in its duty to the plaintiff's assignor. The latter testified that, when he went to the toilet, the only two employés present in the coach were asleep."

I am of the opinion, when the plaintiff had proved that some time after the train had started, and at about 11 o'clock at night, the bag was by the side of the berth in the place where the porter had first put it, as an appropriate place, that the porter was in charge of the car, that when the plaintiff awoke at about 5 o'clock in the morning the bag was gone, that he reported its loss to both the porter and the conductor, that, upon a search made by them, it could not be found, and that it never has been delivered to him, he made out a prima facie case of negligence, which the defendant was bound to meet.

I am in accord with the rule stated in Kates v. Pullman Palace Car Co., 95 Ga. 810, 23 S. E. 186, and reiterated in Pullman Co. v. Schaffner, 126 Ga. 609, 55 S. E. 933, 9 L. R. A. (N. S.) 407:

"While asleep he cannot, in the nature of things, look after the safety of his effects; and therefore the company is bound to maintain such watch and guard during the hours of the night as may be reasonably necessary to secure the safety of the passenger's property. If a loss occurs, the burden of proof is on the company of showing that it exercised this degree of diligence, and that the loss was not occasioned because of a failure on the part of its employés to do so. This rule of evidence rests upon the general and well-recognized principle that, where it is peculiarly within the power of one of the parties to a case to produce evidence, he is under an obligation to do so. The plaintiff, while asleep, could not possibly know what became of his lost effects. The employés of the company, or at least one of them, presumably would know all about it, or, if not, ought to be in a position to explain the cause of his ignorance."

It seems to me this is a wholesome and a fair rule. It does not put upon the defendant the obligation of an innkeeper or carrier of goods. The plaintiff is only required to give such evidence as he can. It is conceded that the duty of care and watchfulness is placed upon the defendant. All it is required to do is to show the reasonable performance of that duty. To the same effect see Pullman Co. v. Freudenstein, 3 Colo. App. 540, 34 Pac. 578; Lewis v. N. Y. Sleeping Car Co., 143 Mass. 267, 9 N. E. 615, 58 Am. Rep. 135.

The determination of the Appellate Term and the judgment of the Municipal Court dismissing the complaint should be reversed, and a

new trial ordered, with costs to appellant in all courts to abide the event.

McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). It is conceded in the prevailing opinion that the defendant is not an insurer of its customers' baggage or property; nor does there exist the obligation of a common carrier or innkeeper to its customers; but liability for loss of passengers' baggage or property must depend solely upon negligence of the sleeping car company or its servants. In this case there was no proof of negligence, except the fact that some time after the train had started, and about 11 o'clock at night, plaintiff placed the bag by the side of his berth in the place where the porter had first put it, as an appropriate place, that the porter was in charge of the car, that, when the plaintiff awoke at about 5 o'clock in the morning, the bag was gone, was evidence of negligence. It seems to me that, if this constituted negligence on the part of the defendant, there is really no difference in the liability of an innkeeper or common carrier and a sleeping car company. Such proof would be necessary to charge an innkeeper or common carrier. To that proposition I do not assent. It seems to me that the plaintiff has to go further and show that the porter absented himself from the car or, by some act of his, relaxed the vigilance and care that was imposed upon him as the porter of the car in looking after the plaintiff's baggage. In this case there is no evidence that the porter was not in the car attending to his duties, awake and vigilant, and, if the action is based upon negligence, there is nothing in the relation between the parties that allowed a presumption of negligence to arise, of which justified the application of the principle of res ipsa loquitur.

In all the cases cited by my Brother Clarke, as I read them, there was some evidence which justified the jury in finding that the person in charge of the car did not exercise the vigilance and care that was required, and that the result was the loss of the baggage. Here we have nothing to justify such a finding, except that the plaintiff put his baggage alongside of his berth, went to sleep, and, when he awoke, the baggage had disappeared. It is clear that there was no bailment, for the baggage was never delivered to the porter, except for the purpose of carrying it upon the car, and the plaintiff afterwards took possession of it and undertook to care for it himself. There was therefore no bailment, no delivery of possession of the baggage to the defendant or its employés for safe-keeping. The plaintiff undertook to care for it himself, placed it in a position selected by himself, and left it there when he went to sleep. To hold the defendant for the disappearance of the baggage under such circumstances would make the defendant an insurer or, at any rate, make the mere loss of the baggage evidence of negligence, which I do not understand to be the law of this state.

In Carpenter v. N. Y., N. H. & H. R. R. Co., 124 N. Y. 53, 26 N. E. 277, 11 L. R. A. 759, 21 Am. St. Rep. 644, it is said:

"The mere proof of the loss of money by a passenger while occupying a berth does not make out a prima facie case, and, to sustain a recovery, some evidence of negligence on the part of the defendant must be given."

In Adams v. New Jersey Steam Boat Co., 151 N. Y. 163, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616, the court, after citing the Carpenter Case, says:

"Sleeping car companies are neither innkeepers nor carriers. A berth in a sleeping car is a convenience of modern origin, and the rules of the common law in regard to carriers or innkeepers have not been extended to this new relation. * * * While the company running sleeping cars is held to a high degree of care in such cases, it is not liable for a loss of this character without some proof of negligence. * * * But it is only upon the ground of negligence that the railroad company can be held liable to the passenger for money stolen from his person during the journey. The ground of the responsibility is the same as to all the passengers, whether they use sleeping berths or not, though the degree of care required may be different. Some proof must be given that the carrier failed to perform the duty of protection to the passenger that is implied in the contract before the question of responsibility can arise, whether the passenger be in one of the sleeping berths or in a seat in the ordinary car."

I think that, in the absence of proof of some fact that would justify a finding of negligence of the porter, there was no cause of action; and, as there was no such proof in this case, the judgment is right, and it should be affirmed.